UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
DAMON WHEELER,                                    :
                            Plaintiff,            :
                                                  :
v.                                                :
                                                  :     **OPINION AND ORDER**
THE CITY OF MIDDLETOWN; P.O.                      :
NATHANIEL DEYOUNG; P.O. GEORGE                    :     16 CV 8857 (VB)
NEILSON; and SGT. RONALD                          :
MAGSAMEN, individually and in their official      :
capacities as Middletown Police Officers,         :
                            Defendants.           :
-------------------------------------------------------------x

Briccetti, J.:

        Plaintiff Damon Wheeler, brings this action pursuant to 42 U.S.C. § 1983 against

defendants the City of Middletown (the "City"), Police Officer ("P.O.") Nathaniel DeYoung,

P.O. George Neilson, and Sergeant ("Sgt.") Ronald Magsamen.[1]  Plaintiff asserts claims for false

arrest, unlawful search and seizure, deprivation of due process/fair trial, and abuse of process.

Plaintiff also brings state law claims for false arrest and abuse of process.[2]

---

[1]      In addition to naming as defendants the City of Middletown, P.O. DeYoung, P.O.
Neilson, and Sgt. Magsamen, the AC also asserted claims against the Orange County District
Attorney's Office and Orange County Assistant District Attorney Alex McManus ("Orange
County Defendants").  On December 7, 2020, plaintiff voluntarily dismissed his claims against
the Orange County Defendants.  (Doc. #107).

         To the extent plaintiff asserts claims under 42 U.S.C. § 1988, Section 1988 "does not
create a right of action in any situation."  Lefcourt v. Legal Aid Soc., 445 F.2d 1150, 1154 n.2
(2d Cir. 1971).  Accordingly, those claims will be dismissed.

[2]      Plaintiff states that he does not oppose dismissal of his claims for municipal liability,
excessive force, malicious prosecution, assault, battery, negligence, negligent hiring, negligent
infliction of emotional harm, and intentional infliction of emotional harm.  Accordingly,
defendants' motion is GRANTED as to the unopposed claims and those claims will be
dismissed.

1

Now pending is defendants' motion to dismiss the amended complaint ("AC") pursuant to Rule 12(b)(6).  (Doc. #94).

For the following reasons, defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the AC and draws all reasonable inferences in plaintiffs' favor, as summarized below.

I.    <u>Factual Background</u>

Plaintiff alleges that on April 26, 2014, he was driving his motor vehicle in the City of Middletown when he noticed he was being followed by what he believed to be an unmarked police vehicle driven by Sgt. Magsamen.  Plaintiff claims he pulled over his vehicle, but Sgt. Magsamen did not pull behind plaintiff.  He further alleges that, when he began to drive again, he was pulled over by P.O. DeYoung and P.O. Neilson.  Plaintiff claims he became frightened when the officers ordered him out of his car at gunpoint because he had been beaten and sexually assaulted by Middletown Police Officers three weeks earlier on April 5, 2014.  According to plaintiff, he therefore decided to put more space between himself and the officers by reversing his vehicle prior to exiting the vehicle.

Plaintiff alleges that after he backed up to a safe distance, he put the vehicle in park, exited the vehicle with his hands in the air, closed the door, and got down on his knees.  He claims P.O. DeYoung and P.O. Neilson laid him on the ground, placed him in handcuffs, and

then searched him and his vehicle. Plaintiff alleges he was arrested before the officers conducted their search.

According to plaintiff, during the search of his vehicle, the officers seized his cellphone, which contained a video of officer misconduct that he had recorded on April 5.

According to plaintiff, at no time on April 26 was he informed that the officers were acting pursuant to a search warrant.

Plaintiff alleges his residence was also searched on April 26, "without any valid reason or provocation." (Doc. #91 ("AC") ¶ 31).

According to plaintiff, the officers' searches "resulted in the permanent destruction of [plaintiff's] vehicle and residence." (AC ¶ 43).

Plaintiff alleges he was charged with criminal possession of a controlled substance in the 7th degree and obstruction of governmental administration, but, on February 2, 2015, the Orange County District Attorney dismissed the controlled substance charge.

According to plaintiff, shortly before trial, he learned P.O. DeYoung and P.O. Neilson were claiming the April 26 stop and subsequent search were executed pursuant to a search warrant. He also learned P.O. DeYoung and P.O. Neilson purported to have obtained two search warrants: one for plaintiff's residence and one for his person and vehicle. Plaintiff alleges P.O. Neilson intentionally withheld the existence of the warrants from both plaintiff and the prosecutor.

Plaintiff's criminal trial began on March 10, 2015. He claims that a jury found him guilty of one count of obstruction of governmental administration. He was sentenced to a term of imprisonment of one year.

Plaintiff alleges the cellphone taken from his car on April 26, 2014, was returned to his wife on January 6, 2017. He claims the cellphone had been reset and its contents erased or edited, including the April 5, 2014, video.

Plaintiff appealed his conviction to the Appellate Term of the New York State Supreme Court, which affirmed. However, on February 13, 2020, the New York State Court of Appeals reversed, finding that the accusatory instrument was facially insufficient.

II.     Procedural Background

Plaintiff commenced this action on November 14, 2016, by filing a pro se complaint against the City of Middletown, P.O. DeYoung, P.O. Neilson, and Sgt. Magsamen. On June 12, 2017, defendants moved to dismiss the complaint. In a report and recommendation ("R&R") issued September 14, 2017, Magistrate Judge Lisa M. Smith recommended that defendants' motion to dismiss be (i) granted with respect to plaintiff's state law claims (to the extent any were asserted) for plaintiff's failure to comply with New York General Municipal Law ("GML") § 50-e, (ii) denied with respect to defendants' assertion of res judicata, and (iii) denied without prejudice to renew with respect to defendants' assertion of collateral estoppel. See Wheeler v. DeYoung, 2017 WL 5501343, at *1 (S.D.N.Y. Sept. 14, 2017), R&R adopted, 2017 WL 5484680 (S.D.N.Y. Nov. 14, 2017); (Doc. #36). The R&R further recommended that plaintiff's federal claims be stayed pending the outcome of his criminal appeal.

On November 14, 2017, the Court adopted the R&R in its entirety, and ordered that this action be stayed pending the conclusion of plaintiff's criminal proceedings. (Doc. #37). After the Court of Appeals reversed plaintiff's conviction, this Court vacated the stay and restored the case to the active docket.

Plaintiff retained counsel in March 2020, filed his notice of claim pursuant to GML §

50-e on July 8, 2020, and filed the AC on August 14, 2020.

## DISCUSSION

I.    <u>Legal Standard</u>

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative

complaint under the "two-pronged approach" articulated by the Supreme Court in <u>Ashcroft v.

Iqbal</u>, 556 U.S. 662, 679 (2009).[3]  First, a plaintiff's legal conclusions and "[t]hreadbare recitals

of the elements of a cause of action, supported by mere conclusory statements," are not entitled

to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  <u>Id</u>. at 678;

<u>Hayden v. Paterson</u>, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded

factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement to relief."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard

of "plausibility."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678; <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544,

564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678.  "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully."  <u>Id</u>. (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 556).

When ruling on a motion to dismiss, the Court need not accept as true "factual assertions

that are contradicted by the complaint itself, by documents upon which the pleadings rely, or by

---

[3]      Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

facts of which the court may take judicial notice." Perry v. NYSARC, Inc., 424 F. App'x 23, 25 (2d Cir. 2011) (summary order); see also, e.g., Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1095 (2d Cir. 1995) (refusing to credit "attenuated allegations" "contradicted both by more specific allegations in the Complaint and by facts of which [the Court] may take judicial notice").

II.     Claims Against Sgt. Ronald Magsamen

    Plaintiff's Section 1983 claims against Sgt. Magsamen must be dismissed.

    To adequately allege a Section 1983 claim, a plaintiff must "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. at 676; see Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020). "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). "Where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted." See Perkins v. City of New York, 2017 WL 1025987, at *2 (S.D.N.Y. Mar. 15, 2017).

    Here, the only allegation regarding Sgt. Magsamen's conduct is that on April 26, 2014, plaintiff was driving his vehicle when he noticed he was being followed closely by what he believed to be an unmarked police vehicle driven by Sgt. Magsamen. Plaintiff alleges that when he pulled his vehicle over, Sgt. Magsamen did not pull behind him. Plaintiff does not, however, allege Sgt. Magsamen was personally involved in any conduct that forms the basis of his Section 1983 claims.

Accordingly, plaintiff's Section 1983 claims with respect to Sgt. Magsamen must be dismissed.

III.    False Arrest Claim

Defendants argue plaintiff fails plausibly to allege a Section 1983 claim for false arrest. Specifically, they contend plaintiff's allegations supporting his false arrest claim are implausible as a matter of law.  Defendants also argue they are entitled to qualified immunity because the officers had arguable probable cause to arrest plaintiff.[4]

The Court disagrees.

A.    Applicable Law

Section 1983 claims for false arrest, derived from the Fourth Amendment right to remain free from unreasonable seizures, are analyzed under the law of the state where the arrest occurs. See Jaegly v. Couch, 439 F.3d 149, 151 (2d Cir. 2006).  "Under New York law, the elements of a false arrest . . . claim are:  (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged."  Hernandez v. United States, 939 F.3d 191, 199 (2d Cir. 2019).

---

[4]    Defendants also argue plaintiff's false arrest claim is barred by the doctrine of collateral estoppel.  Defendants support this argument with nothing more than a general statement that plaintiff's false arrest claim is barred by the doctrine of collateral estoppel and two cases for the general proposition that collateral estoppel precludes parties from relitigating issues fully and fairly decided in a prior proceeding.  Defendants have plainly failed to meet their burden of showing that any issues raised and decided during plaintiff's state criminal proceedings bar plaintiff's claim here.  See Leather v. Eyck, 180 F.3d 420, 426 (2d Cir. 1999) ("The burden . . . is on the [party seeking the benefit of collateral estoppel] to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding.") (emphasis in original).

A confinement by police officers is "otherwise privileged" when it is supported by probable cause. Morris v. Silvestre, 604 F. App'x 22, 24 (2d Cir. 2015) (summary order). Thus, the existence of probable cause is an absolute defense to claims of false arrest. Betts v. Shearman, 751 F.3d 78, 82 (2d Cir. 2014). An officer has probable cause to arrest when he or she has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). Courts determine whether probable cause existed by focusing on the facts available to the arresting officer at the time of the arrest. See Jaegly v. Couch, 439 F.3d at 153. Moreover, the inquiry into the existence of probable cause is objective—the subjective beliefs of the arresting officer are irrelevant. Id. at 153-54.

To defeat a false arrest claim, an arresting officer need not have had probable cause to arrest the plaintiff for the specific offense invoked by the officer at the time of the arrest, or the offense with which the plaintiff was charged. Devenpeck v. Alford, 543 U.S. 146, 153 (2004). If there was probable cause to arrest the plaintiff for some offense, a false arrest claim will fail. Jaegly v. Couch, 439 F.3d at 152-54 ("[A] claim for false arrest turns only on whether probable cause existed to arrest a defendant, and . . . it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest.").

B.    Analysis

Defendants do not dispute that plaintiff plausibly alleges the first three elements of a false arrest claim. Rather, they argue plaintiff has failed plausibly to allege his arrest on April 26, 2014, was not privileged.

The Court disagrees.

Plaintiff alleges he was charged with criminal possession of a controlled substance in the 7th degree and obstruction of governmental administration when he was arrested on April 26, 2014. However, he claims his arrest occurred before P.O. DeYoung and P.O. Neilson executed the search warrants for his vehicle and residence. Therefore, plaintiff's false arrest claim turns on whether the Court can plausibly infer from the facts alleged in the AC that the officers lacked probable cause to arrest plaintiff based on plaintiff's conduct prior to the search of plaintiff's vehicle.

The facts alleged in the AC are as follows: when plaintiff was pulled over on April 26, 2014, he "reversed his vehicle to a distance where [he] could safely exit his vehicle and surrender himself to the police" (AC ¶ 24); "[a]fter retreating to a safe distance, [he] put the vehicle in 'park' and exited the vehicle with his hands up" (id. ¶ 26). Plaintiff alleges the officers arrested plaintiff then searched him and his vehicle.

Under New York law, a person is guilty of obstruction of governmental administration when he "intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference." N.Y. Penal Law § 195.05. It is an obstruction of governmental administration to impair the execution of a lawful search or arrest warrant. See Esmont v. City of New York, 371 F. Supp. 2d 202, 211 (E.D.N.Y. 2005) (citing People v. Stump, 129 Misc. 2d 679, 493 N.Y.S.2d 697, 680 (Suffolk Dist. Ct. 1985)).

The Court finds plaintiff's allegations, accepted as true, would not have provided an officer with probable cause to arrest plaintiff for obstruction of governmental administration

prior to executing the search warrant. Nor do defendants argue they had probable cause to arrest

plaintiff for any other offense. See Mitchell v. City of New York, 841 F.3d 72, 77 (2d Cir. 2016)

("Where an arrest is not made pursuant to a judicial warrant, the defendant in a false arrest case

bears the burden of proving probable cause as an affirmative defense."). Therefore, plaintiff has

sufficiently alleged his arrest was not privileged.

Although defendants do not argue the arrest was supported by probable cause, they

contend plaintiff's false arrest claim fails because his allegations are implausible as a matter of

law. Defendants also argue they are entitled to qualified immunity because the officers had

arguable probable cause to arrest plaintiff.

The Court is not persuaded.

1.    Implausibility

Although the allegations in the complaint must meet a standard of "plausibility,"

Ashcroft v. Iqbal, 556 U.S. at 678, "a complaint cannot be dismissed simply because the court

finds the allegations to be improbable or unlikely." Jones v. City of New York, 2020 WL

1644009, at *13 (S.D.N.Y. Apr. 2, 2020) (citing Denton v. Hernandez, 504 U.S. 25, 32–33

(1992). For the Court to find plaintiff's allegations are factually frivolous, they must "rise to the

level of irrational or the wholly incredible." Id.

Defendants point to several "examples" they contend demonstrate the implausibility of

plaintiff's allegations. (Doc. #96 ("Def. Br.") at ECF 17).[5] However, defendants fail to explain

how any of these "examples" contradict or render implausible any allegation in the AC.

Moreover, each "example" to which defendants point is either beyond the four corners of the

_____

[5]    "ECF__" refers to page numbers automatically assigned by the Court's Electronic Case
Filing System.

10

AC, is not found in materials attached or integral to the AC, is not incorporated to the AC by reference, or is a matter of which the Court cannot take judicial notice. For example, at the motion to dismiss stage, the Court may not consider plaintiff's "admission at sentencing . . . that he wanted to plead guilty." (Id.). Nor can the Court consider statements made in the post-bench-trial findings of fact in Wheeler v. Artola, another Section 1983 case brought by plaintiff, for the truth of those statements. 2019 WL 4593651 (S.D.N.Y. Sept. 23, 2019) (finding, after a three-day bench trial, Wheeler failed to prove by a preponderance of the evidence his claims under Section 1983 stemming from the earlier incident on April 5, 2014). As discussed above, the Court can only "properly take judicial notice of [a] decision[] to the extent" it establishes that such decision was rendered. Elliott v. Nestle Waters N. Am. Inc., 2014 WL 1795297, at *8. Wheeler v. Artola thus has no bearing on the plausibility of plaintiff's allegations here.

The Court also finds unpersuasive defendants' argument that it is implausible police officers would risk their careers by devising a plan to obtain phony search warrants to delete a twenty-three-second video, especially because plaintiff could have easily transferred the video to another device in a matter of seconds. "[N]owhere in Ashcroft v. Iqbal, 556 U.S. 662 (2009), does the Supreme Court teach that a court deciding a motion to dismiss has the power to decide for itself that explicitly pled factual allegations . . . do not deserve to be taken as true simply because they seem 'implausible.'" Athineos v. Andromeda Invs. Co., 2013 WL 6183112, at *1 (S.D.N.Y. Nov. 20, 2013).

### 2. Qualified Immunity

Defendants also argue they are entitled to qualified immunity with respect to plaintiff's false arrest claim.

At this stage of the proceedings, the Court disagrees.

An officer is entitled to qualified immunity on a false arrest claim if the officer had arguable probable cause to arrest. Arrington v. City of New York, 628 F. App'x 46, 49 (2d Cir. 2015) (summary order). "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2015). The arguable probable cause standard is "more favorable to the officers than the one for probable cause," Ackerson v. City of White Plains, 702 F.3d 15, 21 (2d Cir. 2012), as "[t]his forgiving standard protects all but the plainly incompetent or those who knowingly violate the law," Provost v. City of Newburgh, 262 F.3d 146, 160 (2d Cir. 2001).

Nevertheless, a defendant who asserts a qualified immunity defense on a motion to dismiss "faces a formidable hurdle and is usually not successful." Barnett v. Mount Vernon Police Dep't, 523 F. App'x 811, 813 (2d Cir. 2013) (summary order). "The defense will succeed only where entitlement to qualified immunity can be established based solely on the facts appearing on the face of the complaint." Id. "For these reasons, a motion to dismiss is a mismatch for immunity and almost always a bad ground of dismissal." Id.

Defendants argue "undisputed facts," including the officers' "possession of a City Court warrant, a stop of the subject vehicle, a command to exit the vehicle, [and] a sudden reversal at a substantial speed with swerving" (Def. Br. at 20), demonstrate they had arguable probable cause to arrest plaintiff on April 26, 2014. However, the AC contains no allegation of "a sudden reversal at a substantial speed with swerving." (Id.). Indeed, defendants' assertion of arguable probable cause is based on their own version of events, unsupported by allegations in the complaint or information or documents of which the Court can properly take judicial notice. "It is not enough that an officer defendant offers contradictory assertions as to the events in

question, because at this stage of the litigation, where the facts asserted in plaintiff's Complaint tell a different story, and on a motion to dismiss, where discovery has not yet occurred, a court must presume that plaintiff's version of events is true." Betts v. Shearman, 2013 WL 311124, at *5 (S.D.N.Y. Jan. 24, 2013), aff'd, 751 F.3d 78 (2d Cir. 2014).

For the above reasons, defendants have not demonstrated they had arguable probable cause to arrest plaintiff and are therefore not entitled to qualified immunity at this stage of the case.

Accordingly, plaintiff's false arrest claim under Section 1983 against P.O. DeYoung and P.O. Neilson may proceed.

IV.    Unlawful Search and Seizure Claim

Defendants argue plaintiff fails plausibly to plead a Section 1983 claim for unlawful search and seizure in contravention of the Fourth Amendment.

The Court disagrees.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment." United States v. Ramirez, 523 U.S. 65, 71 (1998). However, "it is well recognized that officers executing search warrants on occasion must damage property in order to perform their duty." Cody v. Mello, 59 F.3d 13, 16 (2d Cir.1995)). Therefore, "[b]efore any due process liability can be imposed for property damage occurring in a lawful search, it must be established that the police acted unreasonably or maliciously in bringing about the damage." Cody v. Mello, 59 F.3d at 16.

Here, plaintiff alleges defendants unlawfully searched plaintiff, his vehicle, and his residence on April 26, 2014, which "resulted in the permanent destruction of [his] vehicle and residence." (AC ¶ 43). He also alleges his cellphone and its contents were destroyed. (Id. ¶ 66). He further claims this destruction was part of a pattern of harassment he endured at the hands of defendants. At this stage of the litigation, plaintiff has plausibly alleged that the search of his person, vehicle, and home constituted an unreasonable search and seizure in violation of his Fourth Amendment rights.

Accordingly, plaintiff's Section 1983 claim for unlawful search and seizure against P.O. DeYoung and P.O. Neilson may proceed.

V.     Due Process Claim

Defendants argue plaintiff's substantive due process claim must be dismissed because it is duplicative of his Fourth Amendment claims.

The Court disagrees.

"Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." Albright v. Oliver, 510 U.S. 266, 273 (1994). Thus, "substantive due process claims must be dismissed where they are merely duplicative of claims explicitly protected under other constitutional sources." Carnell v. Myers, 2019 WL 1171489, at *8 (S.D.N.Y. Mar. 13, 2019). A substantive due process claim is considered duplicative of a claim pursuant to another

Amendment where it rests on the same underlying conduct and seeks to remedy the same harm. Id.

Here, plaintiff's substantive due process claim is not duplicative of his false arrest claim. Although similarities exist, the due process claim seeks to remedy harm resulting from defendants' alleged actions subsequent to the arrest, including that defendants composed and swore to a false criminal complaint against plaintiff, withheld exculpatory evidence from prosecutors, concealed the existence of the warrant from plaintiff and prosecutors until the eve of trial, and mishandled plaintiff's property while he was in custody. The false arrest claim, by contrast, seeks to remedy harm resulting exclusively from events that occurred during plaintiff's arrest on April 26, 2014.

Accordingly, plaintiff's substantive due process claim against P.O. DeYoung and P.O. Neilson may proceed.

VI.    Abuse of Process Claim

Defendants argue plaintiff fails plausibly to allege a Section 1983 claim for abuse of process.

The Court disagrees.

To prevail on a claim for abuse of process under Section 1983 and New York law, a plaintiff must show that a defendant "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." Savino v. City of New York, 331 F.3d 63, 76 (2d Cir. 2003). "While the existence of probable cause may not be a complete defense to an abuse of process claim, it may be probative in a court's assessment." Id. Thus, probable cause "functions as a defense when the

15

only evidence of improper purpose is the alleged lack of probable cause." Rao v. City of New York, 2018 WL 1582289, at *10 (E.D.N.Y. Mar. 29, 2018).

"While malicious prosecution concerns the improper issuance of process, the gist of abuse of process is the improper use of process after it is regularly issued." Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994). Therefore, "it is not enough to allege that defendants acted maliciously in bringing the action, because malicious motive alone . . . does not give rise to a cause of action for abuse of process." Dowd v. DeMarco, 314 F. Supp. 3d 576, 585 (S.D.N.Y. 2018).

Plaintiff alleges defendants obtained two warrants authorizing them to search plaintiff's residence, person, and vehicle, with the intent to harm plaintiff by depriving him of evidence concerning the alleged police misconduct that occurred on April 5, 2014. At this stage of the case, these allegations are sufficient to plead an abuse of process claim. See VanZandt v. Fish & Wildlife Serv., 524 F. Supp. 2d 239, 247 (W.D.N.Y. 2007) (denying defendants' motion to dismiss abuse of process claim based on allegations officers obtained and misused a search warrant to steal valuable property from the plaintiff); see also Davis v. United States, 2010 WL 334502, at *17 (C.D. Cal. Jan. 28, 2010) ("[T]he misuse of a judicially-sanctioned warrant to search or take property for improper motives, as alleged here, may constitute an abuse of process.").

Defendants' argument that plaintiff's claim fails because the alleged collateral objective did not occur after process was issued is unpersuasive. Plaintiff alleges defendants' collateral objective in procuring and executing the search warrants was to unlawfully seize plaintiff's cellphone and conceal the video evidence of defendant's misconduct. This conduct allegedly

occurred after defendants obtained the warrant that enabled them to carry out the alleged collateral objective.

Defendants also argue plaintiff's abuse of process claim fails because defendants did not participate in the criminal proceedings. Defendants are wrong. "[T]he gist of abuse of process is the improper use of process after it is regularly issued." Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994). When a claim for abuse of process is premised on the abuse of the search warrant process, and the collateral objective occurs during the execution of the warrant, the subsequent criminal proceedings are not relevant. See e.g., VanZandt v. Fish & Wildlife Serv., 524 F. Supp. 2d at 246–47. Plaintiff's allegation that defendants recovered and deleted or edited the video on plaintiff's phone is sufficient. Moreover, the case upon which defendants rely to support their argument is inapposite. In Bonadies v. Town of Amenia, the plaintiff's abuse of process claim was premised on the defendant's initiation of the proceedings against him. 2020 WL 5209510, *9 (S.D.N.Y. Aug. 31, 2020). The court in Bonadies found the plaintiff failed to allege an abuse of process claim because the defendant was not involved in the criminal proceedings from which the allegedly malicious process stemmed. Such fact pattern is inapposite to the allegations here.

Finally, the Court is not persuaded by defendants' argument that plaintiff's "alleged 'collateral objectives' regarding prior police misconduct have been debunked as implausible and . . . have been rejected in the trial in Wheeler v. Artola." (Def. Br. at ECF 28). As discussed above, defendants have failed to support their "plausibility argument" with contradictory evidence in the complaint, information or documents upon which the pleadings rely, or by facts of which the Court may take judicial notice.

Accordingly, plaintiff's Section 1983 claim for abuse of process against P.O. DeYoung and P.O. Neilson may proceed.

VII.   State Law Claims

Plaintiff's state law claims for false arrest and abuse of process are barred by plaintiff's failure to file a timely notice of claim under Section 50-e of the New York General Municipal Law.[6]

"New York law provides that no tort action shall be prosecuted or maintained against a municipality or any of its officers, agents, or employees unless," inter alia, "a notice of claim has been served against the [municipality]."  Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills, 815 F. Supp. 2d 679, 708 (S.D.N.Y. 2011) (citing GML § 50-i).  "Plaintiffs are required to serve the notice of claim within ninety days after the claim arises."  Id. (citing GML § 50-e(1)(A)).  "A plaintiff must plead in the complaint that:  (1) the Notice of Claim was served; (2) at least thirty days has elapsed since the Notice of Claim was filed and before the complaint was filed; and (3) in that time the defendant has neglected to or refused to adjust or to satisfy the claim."  Horvath v. Daniel, 423 F. Supp. 2d 421, 423 (S.D.N.Y. 2006) (citing GML § 50-i).  "The burden is on the plaintiff to demonstrate compliance with the Notice of Claim requirement."  Id. (citing Rattner v. Planning Comm'n of Vill. of Pleasantville, 156 A.D.2d 521 (2d Dep't 1989)).

New York's notice of claim requirement "is construed strictly by New York state courts and a failure to comply with [the requirement] ordinarily requires a dismissal for failure to state a cause of action."  Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills, 815 F. Supp. 2d at 708 (quoting Hardy v. N.Y.C. Health & Hosp. Corp., 164 F.3d 789, 794 (2d Cir. 1999)).  "The notice of claim requirements apply equally to state tort claims brought as pendent claims in a federal civil rights action."  Warner v. Goshen Police Dep't, 256 F. Supp. 2d 171, 175 (S.D.N.Y.

---

[6]      Because the Court finds plaintiff's claims are time barred it need not address whether they plaintiff failed to timely serve a notice of claim pursuant to GML § 50-i.

2003). The Court has no authority to permit plaintiff to file a late notice of claim. See Brown v. Metropolitan Transp. Auth., 717 F .Supp. 257, 260 (S.D.N.Y.1989)

A.    False Arrest Claim

Plaintiff's false arrest claim accrued when he was released from custody. See Williams v. City of New York, 153 A.D.3d 1301, 1305 (2d Dep't 2017). Therefore, plaintiff's deadline to file his notice of claim expired ninety-days after he was released from custody. Plaintiff filed his notice of claim on July 8, 2020, but he fails to allege when he was released from custody following his April 26, 2014, arrest. However, the Court draws the reasonable inference that plaintiff was not held in custody for approximately six years, from April 26, 2014, until April 9, 2020 (ninety-days before he filed his notice of claim), because plaintiff was sentenced to a one-year term of imprisonment.

Accordingly, plaintiff's state law claim for false arrest is barred by plaintiff's failure to file a timely notice of claim, and must be dismissed.

B.    Abuse of Process Claim

Plaintiff's abuse of process claim accrued on April 26, 2014, the date defendants allegedly abused the warrant process. See Duamutef v. Morris, 956 F. Supp. 1112, 1118 (S.D.N.Y. 1997) ("[A] claim for abuse of process accrues at such time as the criminal process is set in motion . . . against the plaintiff" but not "before such time as plaintiff is aware, or ought to be aware, of those facts providing a basis for his claim."). Plaintiff therefore had ninety days— or until July 25, 2014—to serve his notice of claim. Because plaintiff served his notice of claim on July 8, 2020, this claim must be dismissed.

Plaintiff argues his abuse of process claim did not accrue until his underlying criminal action was dismissed. (Doc. #108 at ECF 24). Although plaintiff is correct that abuse of process

claims typically accrue when the criminal proceeding is terminated, as plaintiff acknowledges, his abuse of process claim is not premised on abuse of the underlying criminal action but rather on abuse of the warrant process.  In recognizing this distinction, plaintiff states the following:

> [D]efendants misunderstand what "regularly issued process" this claim is based on.  Abuse of process claim is not founded on his prosecution for obstruction of governmental administration but is instead founded upon the improper issuance of the search warrant that the defendant officers used as the pretext to stop his car and search his phone.

(Id.).  Thus, the 90-day period for plaintiff to file a notice of claim as to his abuse of process claim began to run not on the date his underlying criminal action concluded but rather on the much earlier date the warrant process was allegedly abused.  See Duamutef v. Morris, 956 F. Supp. at 1118.

Accordingly, plaintiff's state law claim for abuse of process is barred by plaintiff's failure to file a timely notice of claim, and must be dismissed.[7]

## CONCLUSION

The motion to dismiss is GRANTED IN PART and DENIED IN PART.

Plaintiff's Section 1983 claims for false arrest, unlawful search and seizure, deprivation of due process/fair trial, and abuse of process against defendants DeYoung and Neilson shall proceed.  All other claims are dismissed.

By June 15, 2021, defendants DeYoung and Neilson shall file an answer to the remaining claims in the AC.

---

[7]    Because plaintiff voluntarily dismissed his municipal liability claim against the City and the Court dismissed plaintiff's state law claims for failure to comply with GML § 50-e, there are no additional claims against the City and it must be dismissed as a defendant in this action.  See Monell v. Dep't of Soc. Servs. Of City of New York, 436 U.S. 658, 691 (1978) (a municipality "cannot be held liable under § 1983 on a respondeat superior theory").

The Clerk is instructed to terminate defendants the City of Middletown and Sgt. Ronald Magsamen as defendants in this action.

By separate Order, the Court will schedule an initial conference.

The Clerk is further instructed to terminate the motion.  (Doc. #94).

Dated: June 1, 2021
       White Plains, NY

                                        SO ORDERED:

                                        _____
                                        Vincent L. Briccetti
                                        United States District Judge